**Washington v. Hamilton**

*Jennifer Bierly,* for appellee.

*Harry E. Hamilton,* pro se.

KISTLER, *J.,* May 29, 2009—The following is this court's opinion in response to appellant's notice of appeal and matters complained of on appeal filed May 14, 2009. Although this court has never done so before, this court would like to preface this opinion by noting that this opinion marks appellant's eighth appeal filed in the immediate action. Taken together with the appeals filed by appellant's mother and father in actions 06-4974 and 07-0041 respectively, this brings the total number of appeals filed pursuant to the issue of custody to 10 and a total of 548 filings in all these cases to date.

It was famously stated by George Washington, this nation's founding father that, "The administration of justice is the firmest pillar of government." This court would submit to the honorable Superior Court that throughout the past six years, appellant has worked to obstruct the administration of justice by manipulating and impeding the judicial process which is designed to find a prompt resolution to what almost certainly is a traumatic experience for any child. Appellant's toil has resulted in not only a draining of the resources of the Wife, but also of the judicial system and most importantly stability to the child. The flood of litigation works not only to hamstring both of our courts' ability to render a prompt resolution and devote resources to other matters; it also drains the resources of the child's mother which this court believes would be better served providing necessities for the child. For these reasons the court asks the honorable Superior Court to please consider the section of this opinion addressing the abuse of judicial

process and perhaps find a way to facilitate a resolution.

## PROCEDURAL BACKGROUND

After four years of litigation, this court made a ruling on the custody of the parties' child on June 13, 2008. This court, thereafter, entered an order February 9, 2009, regarding defendant's request for paternity and genetic testing. The defendant appealed the court's order of February 9, 2009, on March 16, 2009 (491 MD 2009).

On April 28, 2009, this court filed its opinion in response to defendant's appeal of the order of February 9, 2009. This appeal was recently dismissed by per curium order of the Superior Court (491 MD 2009) on May 18, 2009, for failure to comply with procedural rules.

On April 15, 2009, this court entered a sua sponte order regarding other matters involving the exchange of the child through a supervised custody exchange center.

May 14, 2009, appellant filed a notice of appeal alleging that he is within the appropriate 30-day appeal period of the order of April 15, 2009, but his statement of matters complained of on appeal, filed the same date, makes reference only to matters which were the subject of prior orders and, in most instances, matters already raised in prior appeals to this court.

## FACTUAL BACKGROUND

The convoluted and confusing procedural history of this case, and Father's persistent efforts to appeal and

re-appeal matters already resolved, and to raise those issues ad nauseam, is but a brief glimpse at the pattern of abuse of judicial process that has been the ongoing history of this case.

The parties were married and have one child, a son, of approximately 7 years of age. The custody litigation between these parents has been unparalleled in its volume and breadth throughout the entire history of this matter, since its inception in 2004. After many failed attempts, and Father's stalling tactics, this court was finally able to reach a decision on the merits of the custody dispute between these parents on June 13, 2008. Contrary to expectations, the hearing and ruling by the court has not restored tranquility and predictability to the lives of the family, as Mother and child have continued to be held hostage by the continual and frivolous motions and petitions and other matters filed by Father in this action. Before going forward with the body of this court's opinion regarding the scope of that frivolous and dilatory conduct, the specific matters complained of on this appeal by the defendant must be addressed.

## PATERNITY TESTING TESTIMONY

The appellant's first matter complained of on appeal relates specifically to the paternity testing order of this court issued on February 9, 2009. That matter was ruled on by this court more than three months before this appeal, and was the subject of an appeal already filed by the appellant on March 16, 2009, to 491 MD 2009. As such, the matter is not appropriate for consideration by this court and was not timely filed. Beyond that, this court

has no manner of addressing what possible argument Father is making when he is concerned about: "the availability of parties in a divorce action for copulation?" The appeal at 491 MD 2009 was dismissed by the Superior Court on May 18, 2009.

Clearly, the appeal should be quashed on this point.

## TESTIMONY REGARDING SUPPORT

The appellant's second complained of matter deals in some abstract manner with the subject of support regarding two children of the Mother born to another man outside this marriage. If there is any possible relevance to this point raised by Father, it is not within the subject matter of this court's order of April 15, 2009, regarding the custody exchange of the child of both of these parents. It seems to relate in some, abstract and esoteric, way back to the order of this court dated February 9, 2009, dealing with the genetic testing issue.

As such, it is urged that the appeal be quashed on this point as well.

## PATERNITY TESTING OF DEFENDANT

In all candor, this court was never entirely sure in February of 2009 what possible theory Father wished to proceed upon in his request to have children, not of his marriage, and not fathered by him, to be tested for paternity. It was stipulated at the February 2009 hearing that the appellant was not the father of the twins and that there had never been any opportunity for the appellant to be the father of the twins born outside his marriage.

Father persisted in his demands that the twins be tested to determine their paternity. It was agreed by all parties, in the presence of the court, that Hamilton could be tested and that a sample would be taken from each of the twins, to conclusively prove that Hamilton was not the biological father of the twins. It may, perhaps, be that agreement between the parties that is referenced by the appellant in his third-stated complaint. This court is not certain.

Without the testing of Hamilton, and without invading Mother's privacy, it would otherwise be required to test the entire sample of males on the face of the earth to determine the paternity of the children. This court ruled that Hamilton was not entitled to paternity testing other than to specifically exclude himself as the father.

Most pertinently, this matter again relates to the court's order of February 9, 2009, and as such is not timely raised and has already been raised by the previous appeal before the Superior Court (which has now been dismissed), and the appeal on this point should be quashed.

## JURISDICTION WITHIN LUZERNE COUNTY

Appellant has maintained since the inception of this matter that this court lacks jurisdiction over the child because Father resided outside Centre County. In this court's opinion and order of June 13, 2008, after custody hearing, this court made a determination that jurisdiction did lie in Centre County as Mother and child had resided here continuously from the date of birth, to the present.

Appellant also references a requirement for this court to "recuse when appearance of conflict is raised," however, there has never been a petition filed for recusal and the matter has not been presented, other than in off-handed comments by Father, during arguments on other issues.

Lastly, the appellant references "the international spotlight on Pennsylvania" which appears to reference judicial misconduct in Luzerne County dealing with juvenile delinquency dispositions and other matters. Clearly this reference has no significance or relevance to the matter at hand and now on appeal.

As appellant's primary objections relate to matters neither raised nor decided in the order of April 15, 2009, the appeal on this point should similarly be quashed.

## ABUSE OF JUDICIAL PROCESS

Under normal circumstances, this court would be inclined to return to its busy schedule, content that a quashing of all of the appellant's points raised in his notice of appeal would satisfactorily conclude the matter. However, under the unique circumstances of this case, the Centre County Court of Common Pleas feels compelled to go beyond the response offered heretofore with a request for further humanitarian relief from the Superior Court.

On September 18, 2007, your court through Judges Todd, Bowes and McCaffery issued a memoranda opinion in this case, which contained on page 11 the following admonition to this appellant:

"We make one final observation. The lack of final custody order in this case is directly attributable to Father. His avoidance tactics, his refusal to allow the trial court to address the merits of the issues as evidenced by his filing of repeated, dilatory motions, and his continual filing of frivolous, interlocutory appeals have served to delay matters; *Father's actions are getting dangerously close to abuse of judicial process.* Ultimately, Father's filing of a motion to dismiss this action is incomprehensible to this court; Father has now found himself in a position for which he only has himself to blame." *Washington v. Hamilton,* Superior Court opinion filed to 1845 MDA 2006. (emphasis added)

At the time of that Superior Court opinion, there had been approximately 140 docket entries in the two and a half years of custody litigation. The current count of docket entries in this action is 548. This includes 400 filings to this caption alone, together with 73 filings in the companion case filed by appellant's mother (2006-4974) and an additional 75 filings in the companion case filed by appellant's father (2007-0004). Several of those "companion" filings are exact duplicates of filings by Father in this action. Each requires docketing. Each requires handling by court personnel. Each requires review by the court. Many required hearing. All drain the energy and resources of the "system" and the family. Thirty-three times Father has sought the extraordinary assistance of the court by petitioning for either "emergency relief" or "special relief." In an effort to dispose of this tide of filings, the court resorted at one point to creating a monthly spot on the scheduling calendar for "Harry Hamilton Day."

This court estimates that approximately 10 percent of its total judicial energy and time is expended dealing exclusively and specifically with the matters raised by this father in an ever-accelerating flow of repetitious and dilatory matters. In March 2009, Father filed no less than seven matters; asking for "special" or "emergency" relief no less than five of those times. More importantly, Mr. Hamilton, himself a lawyer in good standing, has effectively reined scheduling and economic ruin upon his ex-wife and his son. Mother is compelled to appear at numerous and lengthy hearings, with counsel, and respond to the flood of matters brought by Father before this court. This conduct of Father must be placing extreme economic stressors on Mother, and emotional stressors on both Mother and child. This conduct, if unchecked, will likely result in debilitating impacts on both Mother and child. As such, it is in the best interest of the parents' minor child to interrupt and terminate the flow of litigiousness from Father.

This is the eighth appeal filed by the appellant in this action, it has become but a "drop in the bucket" compared to the bulk of filings before the trial court in the several related actions brought by the appellant and his parents. The Superior Court's September 2007 admonition that: "Father's actions are getting dangerously close to abuse of judicial process" was made more than 20 months ago, and more than 52 filings have been filed since that time (including three appeals to the Superior Court). There have been 170 additional docket entries in that time. It is without question that Father has developed a course of conduct and a strategy of fatigue and attrition and harassment through the exploitation of his legal educa-

tion and possession of a word processor and fax machine.

The relief necessary to restore the well-being of Mother and child and all court personnel associated with Father is not unprecedented. In the Commonwealth Court decision of *Lal v. Borough of Kennett Square,* 786 A.2d 1019 (Pa. Commw. 2001), decided on November 8, 2001, the Commonwealth Court barred the plaintiff from filing any further appeals or other actions, and instructed the Court of Common Pleas of Chester County to dismiss administratively any filings filed on matters already addressed by the court. The Commonwealth Court recognized that Lal could not be controlled absent those drastic measures, and that unchecked he would continue his "abuse of the judicial process," *id.* at 1021, unless restrained by the appellate court.

This court is ever mindful that at the core of this case is the well-being of a happy, intelligent, and promising young man of 7 years of age. This court does not wish to interrupt Father's periods of partial physical custody with his son and this court does not wish to abandon the child in an environment that is unchecked and unmonitored. But to permit Father to continue to grind Mother and son below the heel of his boot will serve the best interest of no party to this litigation. As such, this court would suggest that it be directed to appoint a guardian ad litem to have regular and unfettered contact with the child to assure his well-being, and who shall have the sole and exclusive power to bring matters for modification or contempt of the current custody order to the attention of the court.

Specifically, this court is asking the Superior Court to quash the appeals filed in this action and to remand to the court of common pleas with specific instructions to:

(1) Enter an order appointing a guardian ad litem to protect the interests of the child, and for that guardian ad litem to be available at all times for the child, and to meet with the child not less than quarterly during the remainder of his minority to determine his welfare. The guardian ad litem shall be empowered to petition the court for any relief appropriate for the well-being of the child. The identity of the guardian ad litem shall not be disclosed to the parents; and

(2) Enter an order barring the Centre County Prothonotary from accepting any legal filing or document relative to the custody of Stanley Harry Edwin Hamilton in this case or any other matter related to the status of this case, other than as filed by the guardian ad litem; and,

(3) Enter a dismissal, with prejudice, of all outstanding matters currently before this court relative to the custody of this child contained in this action.

It is with a heavy heart that this court makes these specific requests of the Superior Court based upon the authority in *Lal*. After struggling with this matter and the frivolous proclivities of Father well into six years, this court is compelled to seek a solution to this increasing and never-ending abuse of judicial process.